IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEVEN DALE LEIBER, | ) |
| Plaintiff/Counterdefendant, | ) ) ) |
| v. | ) Case No. 11-00699-CV-W-FJG |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant/Counterclaimant. | ) ) |

**ORDER**

Before the Court are (1) Defendant/Counterclaimant's Proposed Findings of Fact and Conclusions of Law (Doc. No. 59); and (2) Plaintiff's Objections to the Police Report (Doc. No. 56). This matter came to trial on September 23, 2013, and concluded the same day. After hearing the evidence and reviewing written submissions, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.   Background**

On July 18, 2011, Steven Dale Leiber ("Leiber"), proceeding *pro se*, filed a Complaint against the "United States Post Office," seeking damages for property damage arising from an automobile accident (Doc. No. 1). After the accomplishment of proper service, on April 16, 2012, the United States of America ("United States") moved to have itself substituted as the proper party-defendant in place of the United States Postal Service ("USPS") (Doc. No. 15). That same day, the United States also filed its answer to Leiber's Complaint and asserted a counterclaim against Leiber for property damage (Doc. No. 16). On June 21, 2012, the Court granted the motion to substitute the United

States as the proper party defendant. The Court finds that subject matter jurisdiction, personal jurisdiction, and venue are proper.

On September 23, 2013, the Court conducted a bench trial. Leiber testified on his own behalf. The United States offered live testimony from Michael Collins and deposition testimony from Trent Finnell, an officer with the Kansas City, Missouri Police Department. In addition, the following exhibits were admitted into evidence:

    Ex. 101    Missouri Uniform Accident Report
    Ex. 125    Photograph of mailboxes at the scene of accident
    Ex. 127    Photograph of parked postal vehicle

In hearing this matter, the Court had the opportunity to observe the demeanor and judged the weight and credibility of all witnesses and evidence at the trial. In making credibility determinations, the Court has considered the relationship of the witnesses' interests in the outcome of these proceedings, the witnesses' demeanor while testifying, the witnesses' opportunity to observe and acquire knowledge of what they were testifying about, the extent to which the testimony was logical and internally consistent, and the extent to which the testimony was supported or contradicted by other credible evidence. Perkins v. General Motors Corp., 709 F.Supp. 1487, 1499 (W.D. Mo. 1989). The Court has fully considered <u>all</u> of the testimony, evidence, and arguments of the parties, whether or not explicitly discussed herein. In the context of a trial without a jury, courts have consistently noted that FED. R. CIV. P. 52(a) does not require "either punctilious detail [ ] or slavish tracing of the claims issue by issue and witness by witness." Fair Housing in Huntington Committee, Inc. v. Town of Huntington, New York, 316 F.3d 357, 364 (2d Cir. 2003). Instead:

> A trial court's findings satisfy Rule 52(a) if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision. . . . If a trial judge fails to make a specific finding on a particular fact, the reviewing court may

2

assume that the court impliedly made a finding consistent with his general holding so long as the implied finding is supported by the evidence. . . . Where the trial court makes no direct reference to a claim but must necessarily have found a certain fact, the appellate court will imply such a finding.

Reich v. Lancaster, 55 F.3d 1034, 1057 (5th Cir. 1995) (citations and internal quotations omitted).

## II.     Findings of Fact

1. This action arises from a vehicular accident that occurred on February 20, 2010, at approximately 2:33 p.m. Ex. 101, p. 1.[1]

2. The weather conditions on February 20, 2010 were cloudy, with precipitation. Ex. 101, p. 4 (indicating snowy conditions).[2]

3. One vehicle, a 2003 Ford Explorer, was being operated by Leiber. Ex. 101, p. 1.

4. The other vehicle, a 2001 Ford postal truck, was being operated by an employee with the USPS, Michael Collins ("Collins"). Ex. 101, p.1; Trial transcript 13:19-22.

5. On February 20, 2010, Collins was making his usual mail deliveries, which included delivering mail to side-by-side mailboxes near 6616 Woodson Road. Trial transcript 14:4-13.

6. Woodson Road is a north-south thoroughfare and the side-by-side mailboxes near 6616 Woodson Road are located just off the east (right) side of Woodson Road near where Woodson Road intersects with 67th Street in

---

[1] Plaintiff has filed objections to the police report (see Doc. No. 56). These objections are primarily plaintiff's self-serving statements as to how the accident could not have occurred in the manner depicted in the police report and criticisms of the distances reported by the police officer. While certain statements in the police report are obviously inaccurate (i.e., that the postal delivery vehicle had a left-sided steering wheel), generally the Court finds that the police report is relevant admissible evidence of the events of February 20, 2010.

[2] Plaintiff disputes that it was snowing at the time of the accident; he testified at trial that it was "misting" at the time of the accident. See Trial transcript 5:2-10. Plaintiff later testified that it was drizzling. Trial transcript 6:6-7. Plaintiff agreed that he testified at a prior deposition that it was "raining and sleeting" at the time of the accident. Trial transcript 5:18-6:1. Regardless of the type of precipitation, it is clear that the road was wet and plaintiff had to use windshield wipers at or around the time of the accident.

3

Kansas City, Missouri.  Trial transcript 14:14-19.

7. As per his usual custom, Collins was travelling north on Woodson Road and had pulled his postal truck over to right side of the road next to the side-by-side mailboxes near 6616 Woodson Road.  Trial transcript 14:20-15:6.

8. Collins' postal truck has a right-sided steering wheel allowing Collins to deliver mail to mailboxes on the right side of a road without exiting his vehicle.  Trial transcript 15:10-17.

9. At approximately 2:33 p.m. on February 20, 2010, Collins had pulled his postal truck next to the side-by-side mailboxes near 6616 Woodson Road and was in the process of placing mail in those mailboxes while remaining seated in the driver's seat of his postal truck.  Trial transcript 19:12-21.

10. Collins' postal truck was in gear with Collins' foot on the brake pedal and his hazard lights on.  <u>Id.</u>; Trial transcript 27:23-28:4.

11. Just prior to the time of the accident, Leiber was travelling north on Woodson Road in Kansas City, Missouri, south of 67th Street.  Trial transcript 3:16-17; 6:8-15.

12. After driving through the intersection of 67th Street and Woodson Road, Leiber continued north on Woodson Road and hit the rear driver's-side panel of the postal truck with the front passenger-side panel of the Explorer.  Trial transcript 7:3-25.

13. The Kansas City Missouri Police Department investigated the accident and the officer, Trent S. Finnell, determined that the postal truck was stopped at the time of the accident and that Leiber ran into the stopped vehicle while passing the postal truck on Woodson Road.  Ex. 101, p. 5.

14. Leiber told Officer Finnell that he did not notice the postal truck stopped on the side of the road until he turned on his windshield wipers and as he turned on his wipers, he struck the postal truck.  <u>Id.</u>

15. As a result of the accident on February 20, 2010, the postal truck sustained property damage of $1,102.88.  Joint Stipulation of Uncontroverted Facts, Doc. No. 50, p. 1.

**III. Conclusions of Law**

The United States Postal Service ("USPS") is only subject to tort liability by way of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, *et seq.* ("FTCA").  <u>See</u> 39 U.S.C. § 409(c).  Pursuant to the FTCA, the United States is responsible "for money damages . . .

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The court specifically finds that Michael Collins was acting in the scope and course of his employment with the USPS on February 20, 2010. With the exception of prejudgment interest and punitive damages, the FTCA provides: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Choice of law issues in FTCA actions are governed by 28 U.S.C. § 1346(b), which has been construed to mean that a district court should apply the choice of law rules of the place where the act or omission occurred. Richards v. United States, 369 U.S. 1, 11-12, 82 S.Ct. 585, 591-93 (1962). In Missouri, courts apply the "most significant relationship test," and in an action for personal injury, the law of the state where the injury occurred generally determines the rights and liabilities of the parties. Horn v. B.A.S.S., 92 F.3d 609, 611 (8th Cir. 1996). Here, given that the accident occurred in the state of Missouri, Missouri has the most significant relationship to the accident and therefore Missouri law will apply.

Missouri tort law utilizes a "pure" comparative fault system. Gustafson v. Benda, 661 S.W.2d 11, 15, 17 Appendix A (Mo. 1983)(en banc). Under a pure comparative fault system, "any contributory fault chargeable to a claimant diminishes proportionately the amount awarded the claimant as compensatory damages for any injury attributable to the claimant's contributory fault, but does not bar recovery." Black v. Stevens, 926 S.W.2d 117, 121 (Mo. App. 1996). Every person operating a motor vehicle in the state of Missouri is required to "drive the vehicle in a careful and prudent manner and at a rate

5

of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." R.S.Mo. § 304.012. Under Missouri substantive tort law, the highest degree of care "means that degree of care that a very careful person would use under the same or similar circumstances." MAI 11.01. Under Missouri substantive tort law, a failure by a person operating a motor vehicle to exercise the highest degree of care is negligence. MAI 11.02.

The Court finds that on February 20, 2010, Michael Collins exercised the highest degree of care while operating his postal truck, in that the credible evidence shows that Michael Collins had pulled his postal truck over with its hazard lights on and his foot on the brake pedal when he was hit. Therefore, the Court finds that Michael Collins was not negligent in the operation of his motor vehicle.

The Court further finds that on February 20, 2010, plaintiff Leiber did not exercise the highest degree of care while operating his motor vehicle, in that the evidence shows that Leiber failed to keep a careful lookout, his Ford Explorer came into collision with the rear of Collins' stopped USPS vehicle, and Leiber knew or by the highest degree of care should have known that there was a reasonable likelihood of a collision in time to have stopped or swerved, but failed to do so. See MAI 17.02, 17.04, 17.05.[3] In all these respects, the Court finds Leiber was negligent under Missouri substantive tort law. See MAI 17.02. Moreover, the Court finds that as a result of such negligence, the United States sustained property damage. See MAI 17.02.

Given these findings, the Court concludes under Missouri comparative fault law

---

[3] Plaintiff's primary argument at trial was that it was mathematically impossible for him to have hit the post office vehicle, given that Leiber's vehicle was a foot and a half across the yellow line. See Trial transcript, 3:16-21. The Court finds, however, that Leiber's testimony that his vehicle was a foot and a half across the yellow line is not credible, given all the other evidence of record.

that plaintiff Leiber was 100% at fault for the accident on February 20, 2010, and that the United States (by and through Michael Collins) was 0% at fault for the accident on February 20, 2010.  As a result of this conclusion, the Court finds that Leiber is not entitled to any recovery on his claim for property damage.[4]  Moreover, as a result of the Court's conclusion, the Court finds that the United States is entitled to a recovery on its counterclaim for property damage.

The Court determines that the total amount of the United States' property damages related to this incident is $1,102.88.  See Joint Stipulation of Uncontroverted Facts, Doc. No. 50, p. 1.  Therefore, because the Court finds that Leiber was 100% at fault for the accident and because the Court finds that the United States was 0% at fault for the accident, the Court awards the United States **$1,102.88** for property damage against Leiber.  See MAI 37.03.  The United States indicates it waives any claim to court costs.  See Doc. No. 59, p. 9.

An appropriate judgment of the court will issue forthwith.

**IT IS SO ORDERED.**

Date:  November 8, 2013 **/S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri Fernando J. Gaitan, Jr.
Chief United States District Judge

---

[4] Some evidence and testimony were presented at trial devoted to the issue Leiber's version of the accident and the nature and extent of the property damage sustained by Leiber. While the Court acknowledges that Leiber did sustain property damage as a result of the accident on February 20, 2010, the Court concludes that, because of the conclusion of law made on liability below, it is unnecessary to include herein further factual findings on Leiber's theories of fault and the evidence adduced at trial regarding his property damage.